**GAMMA AUDIO & VIDEO, INC.,
et al., Plaintiffs, Appellees,
Cross–Appellants,**

v.

**EAN–CHEA d/b/a Overseas Video,
et al., Defendant, Appellant,
Cross–Appellees.**

**Nos. 92–2016, 92–2132, 93–
1504 and 93–1518.**

United States Court of Appeals,
First Circuit.

Heard Oct. 7, 1993.

Decided Dec. 22, 1993.

William F. Spallina, Newton, MA, on brief, for defendant, appellant/cross-appellee Ean–Chea, d/b/a Overseas Video.

Philip S. Shaw, with whom Rafferty, Polich & Shaw, Cambridge, MA, was on brief, for plaintiffs, appellees/cross-appellants Taing Tao, Meng I. Ung and Chen V. Ung and Marvin Feldman and Tetel & Feldman, P.C., New York City, on brief, for plaintiff, appellee/cross-appellant Gamma Audio & Video, Inc.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

These cross-appeals involve claims of copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* After a bench trial, judgment was entered in favor of plaintiffs, Gamma Audio & Video, Inc., Taing Tao, Meng I. Ung and Cheng K. Ung (collectively "Gamma"), on their claim that defendant, Ean–Chea, unlawfully distributed two videotapes containing four episodes of the Cambodian language version of *Jade Fox*, a popular Chinese language soap opera. In addition to obtaining a permanent injunction against Ean–Chea, Gamma was awarded $2,500 in statutory damages, as well as costs and attorney's fees. Both parties appeal from various aspects of the final judgment entered below and seek to recover appellate attorney's fees. We affirm the district court on all issues except one; we reverse the district court's finding that the four episodes of *Jade Fox* constitute one "work" for purposes of computing statutory damages. Because we hold that four works were infringed, we vacate the district court's judgment ordering Ean–Chea to pay Gamma $2,500 for the infringement of only one work, and remand for a redetermination of damages.

## I.

### BACKGROUND

Television Broadcasts Ltd. ("TVB") is a producer of Chinese language television pro-

grams and videotapes of those programs. The two programs at issue are *Jade Fox* and *Hunters Prey*. They consist, respectively, of twenty-four and twenty one-hour episodes. Both are Chinese language "Kung Fu"–type serials created by TVB in Hong Kong and originally broadcast there. Although considerably more violent, the programs are of the same genre as American soap operas. It is unclear whether the episodes were originally broadcast daily or weekly. TVB holds a valid United States copyright in each of the programs.

Through a series of four recorded licensing agreements, Gamma obtained three exclusive rights with respect to TVB's programs. Gamma obtained the right to dub TVB videotapes into Cambodian, to duplicate the dubbed versions, and to distribute by rental the Cambodian versions in thirty-seven states including Massachusetts. Gamma assigned all copyrights in the dubbed works to its licensor, Telefeature, Inc. At the time this action was commenced, neither Gamma nor anyone else had registered the copyrights in the derivative works created by Gamma.

Shortly thereafter, Gamma entered into an exclusive licensing agreement with Taing Tao and his partners, the other individual plaintiffs. The agreement gave them the exclusive right to distribute, by rental to the public, the Cambodian language videotapes created by Gamma, in six states including Massachusetts. Ean–Chea owns and operates two video rental stores in Lowell, Massachusetts. The stores are named Overseas Video and Overseas Video II. Ean–Chea was the authorized distributor of the Cambodian versions of TVB's programs in Massachusetts for Gamma's predecessor.

On February 9, 1991, Chea Sokhoeun, acting on Gamma's behalf, went to Overseas Video and rented tapes four through eleven of the Cambodian *Jade Fox* series. Because each tape contained two episodes, the rented tapes covered episodes seven through twenty-two.

On June 13, 1991 Gamma commenced this action in the United States District Court for the District of Massachusetts. The complaint contained six causes of action. Gam-

ma alleged violations of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.* (the "Copyright Act") and the Lanham Act, 15 U.S.C. § 1051 *et seq.* It also alleged four state-law claims: unfair competition, conversion, tortious interference with advantageous business relations and a constructive trust. Gamma alleged that Ean–Chea was behind a massive pirating scheme, and requested millions of dollars in relief.

Together with the complaint, Gamma submitted a one page document entitled "Motion For Seizure and Impoundment." By this motion, Gamma sought an *ex parte* order allowing it "to seize and impound any and all video tapes which are owned or under the control of the defendants and which are Cambodian language versions of the TVB programs, produced under the authority of plaintiff Gamma Audio & Video, Inc. including any and all such videotapes on the premises of the respective stores of defendants." Simultaneously, Gamma moved for a temporary restraining order and preliminary injunction enjoining Ean–Chea from further acts of infringement and from disposing any potentially "incriminating" materials such as business records and advertising materials. This motion also asked that Ean–Chea

> deliver up ... to be impounded during the pendency of this action, all copies of the Gamma TVB Programs and all negatives, prints, matrices, master tapes, all business records relating to the sale and/or rental of video tapes of the Gamma TVB Programs, and all other materials including video recorders, automatic video tape rewinders, and television monitors (collectively "machines") used in the making of such infringing copies and all advertising and materials used in the promotion thereof.

Gamma was authorized to visit Ean–Chea's video stores, in the company of a U.S. Marshal or Deputy Sheriff, "for the purposes of inspection, inventorying, and photographing materials alleged to infringe," and to carry out the impoundment.

District Judge Mazzone granted the motion for seizure and impoundment and a T.R.O. and ordered Gamma to post a bond in the amount of $2,500. On June 24, 1991,

District Judge Zobel, to whom the case was assigned, heard argument on Gamma's motion for a preliminary injunction and granted it.

In the meantime, on June 14, the individual plaintiffs and their attorneys, accompanied by a local deputy sheriff, went to Overseas Video to carry out the seizure and impoundment. The raid yielded nine videotapes containing episodes three through twenty of *Hunters Prey*, which were found in a cardboard box behind the front counter, three high-speed commercial videotape duplicating machines, and a notebook containing business records of Overseas Video that reflected the shipment to Montreal of an unauthorized copy of a program called *Serpentine Romance*.

Six months later, on December 13, 1991, Ean–Chea moved for an order compelling Gamma to return the impounded video equipment and tapes. On January 13, 1992, Judge Zobel granted the motion, to which no opposition had been submitted. On January 17, however, Gamma moved for reconsideration; and on February 26 Judge Zobel granted Gamma's motion for reconsideration and then denied Ean–Chea's motion for return of the impounded material.

On April 28, Gamma elected to recover statutory as opposed to actual damages, on its claim of copyright infringement. The next day it voluntarily dismissed counts two through six of its complaint, leaving only the copyright claim to be tried. By this time, Gamma realized that the copyrights in all but four episodes of *Jade Fox*, numbers thirteen through sixteen, as well as the copyright in *Serpentine Romance* had not been registered prior to the commencement of the lawsuit, and therefore could not support an action seeking statutory damages. These episodes therefore dropped out of the case, leaving only the four episodes of *Jade Fox* and the seized videotapes of *Hunters Prey*, as subjects of this litigation.

On May 11, 1992, at the close of a four-day bench trial, the trial judge stated her findings of fact. In sum, the court found that Gamma had established infringement with respect to episodes thirteen through sixteen of *Jade Fox*, but had failed to carry its burden of proving infringement with respect to the seized *Hunters Prey* tapes.

The court then requested additional submissions by counsel for both parties on two issues. First, whether Ean–Chea's unauthorized distribution of the Cambodian version of four episodes of *Jade Fox* could support a judgment for statutory damages. Second, whether each of the four infringed episodes entitled Gamma to a separate award of statutory damages. The court held that Ean–Chea had wilfully infringed upon Gamma's exclusive right to distribute the video images of the Chinese language version of *Jade Fox* in Massachusetts, and that Gamma could therefore recover statutory damages. It then found that Gamma could recover only one award of statutory damages for the infringement.

Meanwhile, on June 8, 1992, Ean–Chea had moved for the return of its high-speed duplicating machines and notebook, and for payment of the $2,500 bond posted by Gamma. On July 3 the court ordered that the materials be returned, but declined to order payment of the bond.[1] On July 15 Gamma moved for costs under the Copyright Act, including attorney's fees, and on December 12, 1992, Ean–Chea cross-moved for attorney's fees.

In an opinion dated April 2, 1993, the district court ruled upon Gamma's motion for costs and attorney's fees, and Ean–Chea's cross-motion for attorney's fees. The court awarded Gamma its costs and determined that Gamma, as the "prevailing party," was eligible for an award of attorney's fees. It also found that Gamma was entitled to a fee award because Ean–Chea was a willful infringer. The court denied Ean–Chea's cross-motion for fees. These appeals ensued.

## II.

### DISCUSSION

On their respective appeals each party makes several arguments. Ean–Chea maintains that: (1) as a matter of law, Gamma

---

1. The articles are still in Gamma's possession pursuant to an order of attachment.

could not obtain a judgment for statutory damages because the copyrights in the Cambodian language episodes of *Jade Fox* were not registered; (2) Gamma violated Ean–Chea's rights guaranteed by the Fourth Amendment in its search of the premises of Overseas Video; (3) there was a lack of statutory authority for seizing the duplicating machines and notebook; and (4) the district court erred in finding Gamma to be the "prevailing party" under the Copyright Act, and that Ean–Chea was in fact the prevailing party.

On its cross-appeal, Gamma contends that: (1) the district court erred in finding that Ean–Chea had not unlawfully copied the *Hunters Prey* videotapes; (2) the district court erred in limiting Gamma to a single award of statutory damages; and (3) the district court abused its discretion in determining Gamma's attorney's fees award.

We review the district court's findings of fact for clear error, and its conclusions of law *de novo. See Lenn v. Portland Sch. Comm.,* 998 F.2d 1083, 1087 (1st Cir.1993). Mixed questions of law and fact are also reviewed under a clearly erroneous standard. *I.C.C. v. Holmes Transp., Inc.,* 983 F.2d 1122, 1128 (1st Cir.1993).

## A.

### Ean–Chea's Appeal

■ As its first ground on appeal Ean–Chea argues that Gamma could not obtain a judgment for statutory damages with respect to the unlawful distribution of episodes thirteen through sixteen of the Cambodian language version of *Jade Fox* because the copyrights in those episodes were not registered. Gamma argues that Ean–Chea infringed upon the registered copyrights in the registered Chinese language version of those episodes, and that it could enforce those copy-

rights. The questions before this court are twofold: (1) did Ean–Chea infringe upon rights that flow from the copyrights in the Chinese language version of *Jade Fox;* and (2) could Gamma enforce those rights.

As the district court recognized, two sets of copyrights are at issue in this litigation, those in the underlying works—the Chinese language episodes of *Jade Fox,* and those in the derivative works [2] created by Gamma—the Cambodian language episodes of *Jade Fox. See* 17 U.S.C. § 102(a) ("[c]opyright protection subsists ... in original works ... fixed in any tangible medium of expression ... from which they can be reproduced"); 17 U.S.C. § 103(b) (derivative works are separately copyrightable).

Gamma owns the copyrights in the derivative works, and TVB owns the copyrights in the underlying works. Any of the exclusive rights comprised in a copyright may be transferred in whole or in part. *See* 17 U.S.C. § 201(d)(1). By virtue of the licensing agreements, Gamma obtained certain exclusive rights emanating from the copyrights in the underlying works. Thus, Gamma owns exclusive rights flowing from both sets of copyrights.

It is undisputed, however, that the copyrights in Gamma's derivative works are unregistered. Accordingly, Gamma cannot recover statutory damages, the only remedy it sought, for the infringement of its exclusive rights arising under these unregistered copyrights.[3] Instead, Gamma may only recover statutory damages if Ean–Chea's unauthorized rental of the *Jade Fox* videotapes infringed upon exclusive rights held by Gamma pursuant to the registered copyrights in the underlying works.

Ean–Chea maintains that it only infringed upon rights held by Gamma arising out of the

---

**2.** "A 'derivative work' is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgement, condensation, or any other form in which a work may be recast, transformed or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent

an original work of authorship, is a 'derivative work'." 17 U.S.C. § 101.

**3.** To maintain an action for statutory damages, the copyrights in the infringed works must be registered. 17 U.S.C. § 412; Melville B. Nimmer and David Nimmer, 3 *Nimmer on Copyright,* § 14.04[E], at 14–59 (1993) (hereinafter "Nimmer").

unregistered copyrights in the derivative works. We disagree.

Although a derivative work may be separately copyrighted, that copyright does not affect the copyright in the underlying work. The statute provides that

[t]he copyright in a ... derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. *The copyright in such a work is independent of, and does not affect ... any copyright protection in the preexisting material.*

17 U.S.C. § 103(b) (emphasis added); *see* 1 *Nimmer,* § 3.04[A], at 3–17 to –18 (1993). Thus the copyright in a derivative work only protects the original elements contributed by the author of the derivative work, in this case the Cambodian language soundtrack created by Gamma. Any elements that the author of the derivative work borrowed from the underlying work, such as the video images in the Chinese language episodes of *Jade Fox,* remain protected by the copyrights in the underlying work. We are led inexorably to the conclusion that Ean–Chea infringed upon copyrights in the underlying works by renting out episodes of the Cambodian version of *Jade Fox* which contained video images protected by the registered copyrights in the Chinese version of *Jade Fox.* Next we determine whether Gamma may recover for this infringement.

■ Under the Copyright Act, the copyright owner of a derivative work "has a cause of action for infringement by reason of the substantial copying from the derivative work of material which originally appeared in the underlying work." 1 *Nimmer* § 3.05, at 3–30. This means that, if the copyright owner in a derivative work is the exclusive licensee of certain rights in the underlying work, it becomes the copyright owner of the underlying work for the purpose of exercising those rights. *Id.;* 17 U.S.C. § 201(d)(2) (transferee of any exclusive right is entitled "to all of the protection and remedies accorded to the copyright owner").

In the present case, Gamma is the exclusive licensee of the right to distribute, in Massachusetts, the video images of the Chinese production of *Jade Fox,* in conjunction with a Cambodian language soundtrack. *See* 17 U.S.C. § 106 (exclusive rights include rights to copy the work, prepare derivative works, and distribute the work to the public by rental, sale or lease). Accordingly, Gamma may recover for Ean–Chea's infringement. 17 U.S.C. § 501(b) ("[t]he legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it"). It is irrelevant that what was actually distributed by Ean–Chea was the derivative and not the underlying work. *See* 1 *Nimmer* § 3.05, at 3–31; *see also G. Ricordi & Co. v. Paramount Pictures, Inc.,* 189 F.2d 469 (2d Cir.), *cert. denied,* 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641 (1951) (performance of play in which copyright registration had expired constituted infringement of the registered copyright in the underlying story from which play was derived); *Grove Press, Inc. v. Greenleaf Publishing Co.,* 247 F.Supp. 518 (E.D.N.Y. 1965) (copying of unregistered English language translation of French language novel infringed upon the registered copyright in the underlying French language story).

Taking a somewhat scattershot approach to brief writing, Ean–Chea identifies a host of infirmities with respect to the seizure and impoundment order obtained and executed by Gamma at the outset of this litigation. Ean–Chea appears to argue that: (1) in executing the orders signed by Judge Mazzone, Gamma violated Ean–Chea's Fourth Amendment right to be free from unreasonable searches and seizures; (2) § 503(a) of the Copyright Act does not authorize the seizure of videotape duplicating machines; (3) § 509 does not authorize the seizure of books and records (*i.e.,* Ean–Chea's notebook); and (4) although § 509 authorizes the seizure of videotape duplicating machines, Gamma failed to follow the procedures set forth therein.

Ean–Chea has, generously speaking, provided a superficial briefing of the above issues, often dedicating no more then three or four conclusory sentences to a topic before moving on. For this and other reasons we reject all of the above contentions.

■ First we confront Ean–Chea's constitutional claim arising under the Fourth Amendment. While there appears to be some support for the substance of this argument, *see Paramount Pictures Corp. v. Doe*, 821 F.Supp. 82, 90–91 (E.D.N.Y.1993) (proposed seizure and impoundment order in copyright case must specify with particularity the premises to be searched and the articles to be seized or run afoul of Fourth Amendment), Ean–Chea failed to present this argument to the district court and is thus precluded from raising it on appeal. *See McCoy v. Massachusetts Institute of Technology*, 950 F.2d 13, 22 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992) ("theories not raised squarely in the district court cannot be surfaced for the first time on appeal").

■ The next argument raised by Ean–Chea, which implicates the scope of § 503(a)[4], was not presented at oral argument, takes up a mere handful of sentences in its brief, and is wholly unaccompanied by any developed argumentation. We have consistently admonished litigants that they cannot simply present this court with a shopping list of arguments and then expect us to both develop and address each one. Ean–Chea's argument with respect to § 503(a) is presented in such a cursory and mechanical fashion as to render it unpreserved on appeal. *See, e.g., Cohen v. Brown Univ.*, 991 F.2d 888, 903 (1st Cir.1993) ("Litigants cannot preserve an issue for appeal by raising a pennant and then moving on to another subject"); *Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 734 (1st Cir.1990) ("issues adverted to on appeal in a perfunctory manner, unaccompanied by some developed argumentation, are deemed to have been abandoned").

■ Ean–Chea's argument premised upon § 509 is off base. Although he spends a considerable amount of space on this point, Ean–Chea fails to realize that § 509 has no bearing on the matter before us. Section 509(a) provides a list of articles that may be seized and forfeited to the United States in *criminal* prosecutions brought to enforce violations of the Copyright Act. The procedures referred to by Ean–Chea, set forth in § 509(b), apply only to seizures and forfeitures described by subsection (a) of § 509. *See* 17 U.S.C. § 509(b). Because § 509 is limited to criminal actions, it is of no use to Ean–Chea in the present case.

Next, Ean–Chea appeals the attorney's fees component of the district court's judgment. The focus of Ean–Chea's discontent with the fee allowance in the present case is that the district court determined that Gamma and not he was the "prevailing party" below.

Section 505 of the Copyright Act provides as follows:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party.... [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. "Under the Copyright Act, the 'prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing the suit.'" *Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1022 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991) (quoting *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir.1989) (citation omitted)).

■ We review *de novo* the district court's determination that Gamma met the "prevailing party" test. *Domegan v. Ponte*, 972 F.2d 401, 406 (1st Cir.1992), *vacated on other grounds*, —— U.S. ——, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993) (citing cases). Although prevailing party determinations are often reviewed under an abuse of discretion stan-

---

4. Section 503(a) provides as follows:

At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable, of all copies or phonorecords claimed to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced. 17 U.S.C. § 503(a). This provision establishes a discretionary power to order impoundment. *Midway Mfg. Co. v. Omni Video Games, Inc.*, 668 F.2d 70, 72 (1st Cir.1981).

dard, *see McDonald v. Secretary of Health and Human Services*, 884 F.2d 1468, 1474 (1st Cir.1989), such is not the case where, as here, no facts are in dispute and application of the "prevailing party" test presents a pure question of law warranting plenary review. *Domegan*, 972 F.2d at 406–07 n. 8.

■ Ean–Chea argues that Gamma did not "prevail" because, prior to trial, it voluntarily dismissed the five non-copyright claims contained in the complaint, conceded that it was not entitled to statutory damages on twelve episodes of *Jade Fox* whose copyrights had not been registered prior to the commencement of this action, and failed to prove infringement with respect to the *Hunters Prey* videotapes. Although all of this is true, Gamma did succeed on its infringement claim with respect to episodes thirteen through sixteen of *Jade Fox*. While we recognize that Gamma downscaled its case as the litigation proceeded, in light of its victory vis-à-vis the four episodes of *Jade Fox*, we have little trouble in concluding that Gamma succeeded on a "significant issue in the litigation." *See Langton v. Johnston*, 928 F.2d 1206, 1226 (1st Cir.1991) (significance must be viewed in light of "the scope and tenor of the litigation as a whole").

Furthermore, by virtue of its success, Gamma was awarded $2,500 in statutory damages, and Ean–Chea was permanently enjoined from further acts of infringement. This restriction on Ean–Chea's future behavior marks a clear change in the legal relationship between the parties enuring to Gamma's benefit. In addition, the monetary judgment recovered by Gamma on the merits of its claim is more than sufficient to qualify it as a "prevailing party." *See, e.g., Farrar v. Hobby*, —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (civil rights plaintiff who won only nominal damages of one dollar still "prevailing party" and thus eligible for attorney's fee award).

Ean–Chea points to the poor winning percentage posted by Gamma and concludes that Gamma cannot possibly be a "prevailing party." We disagree. In the first place, the voluntarily dismissed claims were not copyright claims and thus not germane to the determination of whether Gamma was a

"prevailing party" under the Copyright Act. More importantly, this court has firmly rejected a "mathematical approach" to the "prevailing party" determination. *See Domegan*, 972 F.2d at 407 n. 9. In any event, it is well settled that "the degree of the plaintiff's overall success goes to the reasonableness" and not the allowability of an attorney's fee award. *Farrar*, —— U.S. at ——, 113 S.Ct. at 574 (quoting *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989)). We affirm the district court's determination that Gamma was the "prevailing party," and hence eligible for a fee award.

We have considered Ean–Chea's remaining arguments and find them to be without merit.

**B.**

### Gamma's Cross–Appeal

As its first ground for appeal Gamma argues that the district court clearly erred by finding that it failed to prove that Ean–Chea had either reproduced or distributed the videotapes of *Hunters Prey*.

■ We start with the proposition that the plaintiff in a copyright action carries the burden of proof. *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 605 (1st Cir.1988); *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 483 (1st Cir.), *cert. denied*, 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985). To carry this burden a plaintiff must prove each of the elements of copyright infringement: (1) ownership of the copyright; and (2) copying by the defendant. *Id.* It is undisputed that Gamma satisfied the first prong of this test, and Gamma argues that it met the second through circumstantial evidence presented at trial.

We have recognized that, in a copyright action,

proof by direct evidence of copying is generally not possible since the actual act of copying is rarely witnessed or recorded. Normally, there is no physical proof of copying other than the offending object itself. Copying therefore is generally es-

tablished by showing that the defendant had access to the copyrighted work and that the offending and copyrighted articles are "substantially similar."

*Concrete Machinery Co.,* 843 F.2d at 605. "Copying is demonstrated when someone who has access to a copyrighted work uses material substantially similar to the copyrighted work in a manner which interferes with a right protected by 17 U.S.C. § 106." *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 291 (3d Cir.1991) (footnote omitted). Among the rights protected by § 106 are the rights to copy and distribute the copyrighted work.

■ Both access and substantial similarity are undisputed in the present case, and there was no question that the videotapes of *Hunters Prey* found in Ean–Chea's store were piratical copies.[5] Ean–Chea, however, disclaimed any knowledge of the *Hunters Prey* tapes found at his store, and denied that he had ever copied or distributed tapes of *Hunters Prey.* Ean–Chea testified that a customer must have rented the tapes at another video store and accidentally returned them to Overseas Video.

The function of the district court acting as fact-finder was to determine, by weighing all of the evidence, if Gamma had met its ultimate burden of persuasion. The court concluded that it had not. The court found that "[t]he only direct evidence with respect to *Hunters Prey* is that at the time of the raid there were . . . 10 or 11 tapes, in a box near the counter." Viewing this evidence along with the circumstantial evidence, which consisted primarily of the fact that videotape copy machines were found at Ean–Chea's store, the district court found that either of two conclusions were possible: either (1) appellant had copied tapes of *Hunters Prey* and/or held them out for distribution; or (2) the tapes belonged to another store and some customer erroneously returned them to Ean–Chea's store. According to the district court, the latter "is an equally believable version on the basis of the evidence. . . ." *Id.*

Taken as a whole the court found that the evidence was ambiguous to the extent that it was "not prepared to draw the inference" that Gamma wished it to draw, namely, that Ean–Chea either copied or distributed videotapes of *Hunters Prey.*

Although the evidence could have supported a finding of infringement, the district court credited a plausible, lawful explanation for the presence of the tapes at Ean–Chea's store. It is established beyond cavil that the trial judge is in the best position to assess the credibility of witnesses, *see Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985) (assessing the credibility of witnesses is peculiarly within the trial judge's province), and great deference must be given to a trial court's findings based on credibility determinations. *Rodriguez–Morales v. The Veterans Administration,* 931 F.2d 980, 982 (1st Cir.1991). "Where there are two permissible views of the evidence, the interpretation assigned by the fact-finder must be adopted." *Id.* Given the restricted nature of our review of the district court's findings of fact, we cannot say that it clearly erred in finding that Gamma failed to carry its burden of proving that Ean–Chea had either made unauthorized copies or unauthorized rentals of videotapes of *Hunters Prey.*

■ Gamma argues that it is entitled to four awards of statutory damages for Ean–Chea's willful infringement of episodes thirteen through sixteen of *Jade Fox.* Under the Copyright Act a party may seek an award of statutory damages "in lieu" of actual damages. 17 U.S.C. § 504(c). Section 504(c) provides for an award of statutory damages "for all infringements involved in the action, *with respect to any one work,*" and further provides that for "purposes of this subsection, all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1) (emphasis added).

The district court gave Gamma a single award of statutory damages. Although Ean–Chea was found to have infringed upon the copyrights in four separate episodes of *Jade Fox,* the court found that these episodes constituted one "work" for purposes of computing statutory damages. Since the district

5. "Piratical" copies are copies made without authorization of the copyright owner. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 162, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5785.

court's findings on this issue were substantially influenced by its choice of a different legal standard than we apply, its determination on this mixed question of law and fact is entitled to less deference on review than would be accorded a pure finding of fact. *See United States v. Howard*, 996 F.2d 1320, 1327 (1st Cir.1993); *see also Picture Music, Inc. v. Bourne, Inc.*, 457 F.2d 1213, 1215 n. 5 (2d Cir.1972) (rejecting "clearly erroneous" standard when reviewing whether work was created "for hire" under § 24 of Copyright Act).

Our discussion is guided by the Second Circuit's recent decision in *Twin Peaks Productions v. Publications Intern.*, 996 F.2d 1366 (2d Cir.1993). The issue in *Twin Peaks* was whether eight separately written teleplays (or videotapes of eight televised episodes)[6] of the television program *Twin Peaks* constituted eight works or a single work under § 504(c). The district court found that the infringement of each episode warranted its own award of statutory damages, and the court of appeals affirmed.

The eight *Twin Peaks* episodes, as the Second Circuit explained, "represent a current television genre in which one or more plots continue from one episode to another." *Id.* at 1381. In fact, *Twin Peaks* carried the point of the basic plot—who killed Laura Palmer—throughout its first season. On the issue of statutory damages, the court stated:

> The author of eight scripts for eight television episodes is not limited to one award of statutory damages just because he or she can continue the plot line from one episode to the next and hold the viewers' interest without furnishing a resolution. We might well have a different situation if a book written as a single work was then adapted for television as a group of episodes, for example, the six-part television adaptations of John LeCarre's "Tinker, Tailor, Soldier, Spy" and "Smiley's People." Even in such circumstances, though there would be but one book infringed, there might be sepa-

rate awards for infringement of each televised episode.

*Id.* The Second Circuit found that *Twin Peaks* was an easy case, and that the eight teleplays or televised episodes clearly constituted eight separate works. While our case strongly resembles *Twin Peaks,* we pause here to assay some differences.

First, the copyrights in episodes thirteen through sixteen of *Jade Fox* were registered on a single registration form, while the eight episodes of *Twin Peaks* were "separately copyrighted." *Id.* Second, there was no evidence submitted as to whether the scripts for episodes thirteen through sixteen of *Jade Fox* were separately written, whereas the eight episodes of *Twin Peaks* were based upon separately written teleplays. *Id.*

We take a step back, at this juncture, to discuss some background concerning statutory damages in copyright actions. Unlike the Copyright Act of 1909, under which statutory damages were available for "each infringement that was separate," *Robert Stigwood Group, Ltd. v. O'Reilly*, 530 F.2d 1096, 1102 (2d Cir.1976), the present Copyright Act "shifts the unit of damages inquiry from number of infringements to number of works." *Twin Peaks,* 996 F.2d at 1381. The House Report concerning § 504(c)(1) makes it clear that,

> although the minimum and maximum amounts [of statutory damage awards] are to be multiplied where multiple "works" are involved in the suit, the same is not true with respect to multiple copyrights, multiple owners, multiple exclusive rights, or multiple registrations.

H.R.Rep. No. 1476, 94th Cong., 2d Sess. 162, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5778.

The term "work," is undefined under the Copyright Act. Although the *Twin Peaks* court did not undertake the task of supplying a definition, one court of appeals has posited that "separate copyrights are not distinct works unless they can 'live their own copyright life.'" *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C.Cir.1990) (quoting *Stigwood,* 530 F.2d at 1105).[7] The test set forth

---

6. The court indicated that its holding applied whether written teleplays or videotaped television episodes were at issue. *Twin Peaks, 996 F.2d at 1381.*

7. *Walt Disney* arose under the Copyright Act of 1976 and involved the infringement of six copyrights, each protecting a distinct pose of either Mickey or Minnie Mouse. The court held that

in *Walt Disney* is a functional one, with the focus on whether each expression (or in our case, television episode) has an independent economic value and is, in itself, viable. *See Walt Disney*, 897 F.2d at 569; *see also* 3 *Nimmer* § 14.04[E], at 14–64.

The district court's determination that all four episodes of *Jade Fox* were one "work" for the purpose of statutory damages was based on two facts: that Gamma sells or rents only complete sets of the *Jade Fox* series to video stores, and the copyrights in the four episodes at issue were registered on one form. The former fact, according to the district court, "suggests plaintiffs view the *Jade Fox* episodes as one work for economic purposes notwithstanding the rental by consumers of only a few episodes at a time or its production in separate episodes[,]" while the latter fact "indicates [that] TVB [the author of *Jade Fox* ] considered at least these four episodes to be one work." We do not find the district court's reasoning compelling.

Starting with the district court's second point, we find that there is simply no authority for drawing such an inference. Under regulations promulgated by the Copyright Office, the copyrights in multiple works may be registered on a single form, and thus considered one work *for the purposes of registration, see* 37 C.F.R. § 202.3(b)(3)(A), while still qualifying as separate "works" for purposes of awarding statutory damages.[8]

We are unable to find any language in either the statute or the corresponding regulations that precludes a copyright owner from registering the copyrights in multiple works on a single registration form while still collecting an award of statutory damages for the infringement of each work's copyright.

With regard to the district court's first point, that Gamma sells or rents only complete *Jade Fox* sets to video stores, we do not find this fact persuasive in the present inquiry. A distributor's decision to sell or rent complete sets of a series to video stores in no way indicates that each episode in the series is unable to stand alone.[9] More significant for present purposes is the fact that (1) viewers who rent the tapes from their local video stores may rent as few or as many tapes as they want, may view one, two, or twenty episodes in a single sitting, and may never watch or rent all of the episodes; and (2) each episode in the *Jade Fox* series was separately produced.

While our case arguably falls somewhere between the *Twin Peaks* and the hypothetical novel turned television mini-series scenario presented therein, 996 F.2d at 1381, it more closely resembles *Twin Peaks* than the hypothetical. Each episode of *Jade Fox* was produced independently from the other episodes, and each episode of *Jade Fox* was aired on television independently from the

---

the defendant had only infringed upon two works, Mickey and Minnie, for purposes of assessing statutory damages. *See Walt Disney*, 897 F.2d at 570 ("Mickey is still Mickey whether he is smiling or frowning, running or walking, waving his left hand or his right.").

8. The regulation states in pertinent part:

For the purpose of registration on a single application and upon payment of a single registration fee, the following shall be considered a single work: (A) In the case of published works: All copyrightable elements that are otherwise copyrightable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same. . . .

37 C.F.R. § 202.3(b)(3)(A). Although we question whether the four episodes of *Jade Fox* at issue here were "included in a single unit of publication," since episodes thirteen through sixteen of *Jade Fox* are contained on two videotapes, this goes to the issue of TVB's compliance

with the copyright regulations, not whether Gamma is entitled to multiple awards of statutory damages. As the legislative history to § 504(c)(1) makes clear, the number of copyright registrations is not the unit of reference for determining the number of awards of statutory damages. Moreover, we note that the *Twin Peaks* court did not rely on the number of copyright registrations in reaching its result. *See Twin Peaks*, 996 F.2d at 1381.

9. If the distributor of the *Rocky* series of motion pictures required video stores to purchase all five of the movies, or alternatively, packaged the movies as a boxed set for resale, the five movies would not suddenly become one "work" for the purpose of damages. *See, e.g., Cormack v. Sunshine Food Stores, Inc.*, 675 F.Supp. 374, 377 (E.D.Mich.1987) (written tests designed to detect honesty and emotional status, respectively in the workplace are not one "work" for the purpose of statutory damages just because they are packaged and sold together).

preceding and subsequent episodes.[10] In addition, unlike the "Tinker, Tailor, Soldier, Spy" hypothetical in *Twin Peaks,* our case does not involve the infringement of a single book, but rather, much like *Twin Peaks,* involves the infringement of four separately-produced television episodes prepared as part of a weekly (or perhaps daily) series. We conclude that Gamma is entitled to four awards of statutory damages for Ean–Chea's infringement of four separate "works."

■■■ As its final argument on its cross-appeal, Gamma contests the district court's attorney's fee award. The fee application requested a total of $80,198.62 and costs in the amount of $7,608.87. The district court awarded all of the requested costs, but substantially reduced Gamma's fee request, awarding $12,500. This reduction was based on a multitude of factors.

Generally speaking, the district court found that Gamma had "over-prosecuted this case, pursued infringement actions on works that were not registered, and achieved very limited success." More specifically, the court found that plaintiffs had originally "filed a six-count complaint alleging a massive scheme of wrongdoing, ... seeking millions of dollars in damages," and then, armed with a court order,

> raided Ean–Chea's store ... apparently expecting to uncover a huge cache of infringing materials. Instead, what they found was a single set of pirated 'Hunters Prey' tapes located under some trash in a cardboard box by the counter, some high speed video copying equipment, and a business record that reflected the shipment of one unauthorized copy of a program entitled 'Serpentine Romance' to Montreal.

The court further noted that, as trial neared, Gamma dismissed the five non-copyright claims, "and conceded that because [the copyrights in] Serpentine Romance and twelve episodes of *Jade Fox* had not been registered prior to the filing of the lawsuit, they too fell out of the case."

With respect to Gamma's fee request, the court had much to say:

many of the [time-sheet] entries were extremely vague, making it virtually impossible ... to determine whether requested hours were excessive, redundant (especially with respect to how New York and local counsel divided tasks), or otherwise unnecessary, as well as to parse out attorney time and expenses related to the unsuccessful claims and [voluntarily] dismissed portion of the case.

The district court then pointed out numerous ambiguities in the attorneys' records, as well as instances where telephone conversations between counsel were reflected only in the records of one of the two attorneys. Finally the court provided examples of charges that appeared facially excessive, such as billing the client for leaving a telephone message when the person telephoned was absent. The court settled on a fee award that it believed represented reasonable compensation for the nature of the work performed, taking into account how much time was actually expended.

The district court found that the time-sheet entries submitted by Gamma's attorney's were so ambiguous that it was not clear which claims in the complaint the entries related to. For example, the district court noted entries that stated merely "Draft documents," "Work on Case," "Review of Discovery," and "study file, legal research re Mass. case."

We review fee awards for abuse of discretion, *see Foley v. City of Lowell, Mass.,* 948 F.2d 10, 18–19 (1st Cir.1991), and " 'normally prefer to defer to any thoughtful rationale and decision developed by a trial court and to avoid exhaustive second guessing.' " *Domegan,* 972 F.2d at 421 (quoting *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir. 1984)).

Under the circumstances, the district court clearly acted within the broad limits of its discretion by substantially discounting Gamma's fee request. Finding no abuse, we affirm the district court's fee award.

Each party contends that, under 17 U.S.C. § 505, it is entitled to recover its costs, in-

---

**10.** Because no English translation of the episodes was provided below, the district court was unable to study the episodes' plots to gauge their relation to each other.

cluding attorney's fees, incurred on this appeal. In addition, Gamma seeks sanctions, in the form of attorney's fees, under Fed. R.App.P. 38. Rule 38 allows for fees and double costs to be awarded to an appellee where the appellant has brought a frivolous appeal. While Ean–Chea did not prevail on his appeal, we do not feel that this case warrants the imposition of sanctions under Rule 38.

 While it is true that, under § 505, the Copyright Act, this court may make an award of attorney's fees to the prevailing party for services rendered on appeal, *see Twin Peaks*, 996 F.2d at 1383; *see also* 3 *Nimmer* § 14.10[E], at 14–129 ("An award of attorney's fees may be made for services rendered on appeal as well as at the trial level"), we decline to do so. Because he did not prevail on his appeal or the cross-appeal, Ean–Chea is not entitled to an award of fees. The appeal, however, was not frivolous, and Gamma only achieved limited success on its cross-appeal. Therefore, in the exercise of our discretion we decline to award Gamma appellate fees. Gamma is, of course, entitled to costs on appeal.

### III.

#### CONCLUSION

On Ean–Chea's appeal, the judgment of the district court is affirmed. On Gamma's cross-appeal, the judgment of the district court is affirmed except that we reverse its finding as to the number of "works" infringed upon by Ean–Chea for the purpose of calculating statutory damages. We hold that Ean–Chea infringed upon four works, not one. We therefore vacate the district court's judgment ordering Ean–Chea to pay Gamma $2,500 in statutory damages, and remand to the district court for a redetermination of damages based upon our holding.