United States Court of Appeals,

Eleventh Circuit.

No. 95-4424.

MCA TELEVISION LTD. a Delaware Corporation, Plaintiff-Appellee,

v.

C. Elvin FELTNER, Jr., Defendant-Appellant.

J. Clifford Curley, et al., Defendants.

July 26, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-14213-CIV-EBD), Edward B. Davis, Judge.

Before COX and BARKETT, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

BARKETT, Circuit Judge:

C. Elvin Feltner, Jr., appeals from a $9 million judgment against him in favor of MCA Television following a non-jury copyright infringement trial. Feltner contends that the judgment must be reversed because the district court (1) lacked subject matter jurisdiction, (2) erred in finding that he breached licensing agreements when he failed to pay licensing fees that had become due under those agreements, and, finally (3) erred in calculating damages. We affirm.

*Factual Background*

MCA owns syndicated television programs and Feltner owns television stations. MCA and Feltner entered into an agreement in which MCA licensed Feltner to show certain programs, such as "Kojak" and "The A Team." When Feltner failed to pay fees that had

_____

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

become due, MCA suspended his right to televise its programs. Notwithstanding the suspension, Feltner continued to televise the MCA programs. MCA sued Feltner claiming 900 separate acts of copyright infringement; one for each unauthorized program that Feltner aired. The district court found for MCA, awarded $10,000 pursuant to statute for each of the 900 unauthorized programs aired, and entered a $9 million judgment against Feltner.

*Discussion*

Feltner initially asserts that the district court lacked subject matter jurisdiction because this cause did not "arise under" the Copyright Act. 17 U.S.C. § 501 *et seq.* Feltner argues that this case involves a breach of contract claim and that the federal district court therefore did not have jurisdiction. We disagree and find that the court had subject matter jurisdiction over MCA's claim under the Copyright Act. *See Sullivan v. Naturalis,* 5 F.3d 1410, 1413 (11th Cir.1993).

Feltner next asserts that the district court erred in finding that he breached the licensing agreements when he failed to pay the licensing fees. The licensing agreements provided that, if Feltner failed to pay the licensing fees, MCA could terminate Feltner's right to broadcast MCA programs. Feltner does not dispute that he failed to pay the fees. He argues, rather, that MCA waived its right to terminate the licensing agreements because MCA treated prior termination letters merely as collection letters to induce payment. We conclude that the district court's factual finding that MCA did not waive its right to terminate the licensing agreements was not clearly erroneous.

Finally, Feltner argues that the district court erred in its calculation of damages in various ways, only some of which we find necessary to discuss here. Initially, we reject Feltner's assertion that the district court erred in finding that Feltner acted "willfully" in infringing MCA's copyright, which resulted in a higher statutory damages determination. Section 504(c)(1) of the Copyright Act, 17 U.S.C. § 504(c), provides that the copyright owner may elect to recover, instead of actual damages and profits, an award of statutory damages "in a sum of not less than $500 or more than $20,000" for each infringement. *See* 17 U.S.C. § 504(c)(1) (1996). Section 504(c)(2) provides for an enhanced damages award if the infringement was willful and for a reduced award if the infringement was innocent. One commentator has stated that "[i]t seems clear that as here used "willfully' means with knowledge that the defendant's conduct constitutes copyright infringement." 3 *Nimmer on Copyright* (1990), § 14.04[B], 14-58-60 (emphasis added).

We note that, although the district court found that Feltner's infringements of MCA's copyrights were "willful, not innocent, in nature," the district court awarded damages of $10,000 per airing, an amount which did not require a finding of willfulness. In any event, the district court's finding that Feltner acted willfully was not clearly erroneous. As the court pointed out, Feltner knew that MCA's revocation of his stations' license to air MCA programs prevented him from lawfully broadcasting them. As such, Feltner knew his conduct constituted copyright infringement.

Feltner also argues that the district court erred in calculating damages because it awarded damages for each *episode* broadcast, as opposed to each series, as a separate "work." Although the federal Copyright Act allows for damages based on each "work," *see* 17 U.S.C. § 504(c)(1) (providing that "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for *all* infringements involved in the action, *with respect to any one work* ") (emphasis added), it does not define the term "work."

The circuits that have defined "work" have held that "separate copyrights are not distinct "works' unless they can "live their own copyright life.' " *Gamma Audio & Video, Inc. v. Ean-Chea,* 11 F.3d 1106 (1st Cir.1993); *Robert Stigwood Group, Ltd. v. O'Reilly,* 530 F.2d 1096, 1105 (2nd Cir.1976); *Walt Disney Co. v. Powell,* 897 F.2d 565, 569 (D.C.Cir.1990). This test focuses on whether each expression has an independent economic value and is, in itself, viable. 11 F.3d at 1116, 530 F.2d at 1105, 897 F.2d at 568.

Feltner asserts that the industry practice is to enter contracts for television series, not individual episodes of series, and that no one would purchase and air just one episode of a series. He argues that, for these reasons, an individual episode of a series does not have independent value, is not "commercially viable," and therefore is not a "work" under the test adopted by the First, Second, and D.C. Circuits.

Although we agree with the test adopted by other circuits in defining a "work," we find that Feltner has failed to meet it here.

Indeed, in *Gamma,* the First Circuit rejected the same argument Feltner now makes. *Gamma* involved a video rental store, Ean-Chea, that reproduced and rented unauthorized videotape copies. 11 F.3d at 1108. The district court found that Ean-Chea infringed the copyrights of four episodes of a Chinese language television series owned by Gamma. In calculating statutory damages, the district court gave Gamma a single award, concluding that although Ean-Chea had infringed upon the copyrights in four separate episodes of the series, these episodes constituted only one work based in part on the fact that Gamma sells or rents only complete sets of the series to video stores. *Id.* at 1115. The First Circuit reversed, reasoning that

> [a] distributor's decision to sell or rent complete sets of a series to video stores in no way indicates that each episode in the series is unable to stand alone. More significant for present purposes is the fact that (1) viewers who rent the tapes from their local video stores may rent as few or as many tapes as they want, may view one, two, or twenty episodes in a single sitting, and may never watch or rent all of the episodes; and (2) each episode in the [ ] series was separately produced.

*Id.* at 1117.

Similarly, the decision of a distributor of television programs to sell television series as a block, rather than as individual shows, in no way indicates that each episode in a series is unable to stand alone. Each episode was produced independently from the other episodes and each was aired independently from preceding and subsequent episodes. Moreover, each episode, and not each series, was individually copyrighted by MCA.

Along the same lines, we reject Feltner's argument that each episode was part of a "collective work." Section 504(c)(1)

provides that "all parts of a compilation ... constitute one work."
The Copyright Act defines "compilation" as

> a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. *The term "compilation" includes collective works.*

17 U.S.C. § 101 (emphasis added). A "collective work" is "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." *Id.*

Feltner points to a clause in the licensing agreements referring to anthologies and argues that each series at issue here is an anthology. We are not persuaded. In *Twin Peaks Productions, Inc. v. Publications International, Ltd.,* 996 F.2d 1366 (2nd Cir.1993), the Second Circuit addressed the issue of the appropriate unit for determining statutory copyright damages. There, Publications International had published a book containing a detailed discussion of the plots of eight episodes of the television show "Twin Peaks." Publications International argued, as Feltner does here, that, although each episode of "Twin Peaks" was individually copyrighted, it constituted a single work under section 504 of the Copyright Act. The Second Circuit rejected this argument, stating that "[t]he author of eight scripts for eight television episodes is not limited to one award of statutory damages just because he or she can continue the plot line from one episode to the next and hold the viewers' interest without furnishing a resolution." *Id.* at 1381.

Feltner's argument is not as strong as that rejected by the

Second Circuit in *Twin Peaks.* Whereas "Twin Peaks" involved a series of eight shows with a plot that linked the shows together into one cohesive story, the programs at issue here—"The A Team" and "Kojak"—are series with individual plots in each episode. Thus, the district court properly awarded damages for each television episode, rather than for each series, broadcast as a separate "work."

Finally, Feltner asserts that the district court erred in calculating damages because it awarded damages for multiple airings of the same episode. He argues that, under the Copyright Act, statutory damages are based on each "work" infringed, rather than each infringement, *see* 17 U.S.C. § 504(c), and that if the same episode is aired three times, only one work has been infringed, not three. MCA responds that Feltner did not properly place this issue before the district court for determination and that, as a result, we cannot reach the merits of the issue. We agree with MCA.

Section 504(c)(1) provides that "the copyright owner may elect ... an award of statutory damages for all infringements involved in the action, *with respect to any one work*...." (emphasis added). The Fifth Circuit summarized the effect of section 504(c)(1):

> Under this section, the total number of "awards" of statutory damages (each ranging from $500 to $20,000) that a plaintiff may recover in any given action depends on the number of works that are infringed and the number of individually liable infringers, regardless of the number of infringements of those works. So if a plaintiff proves that one defendant committed five separate infringements of one copyrighted work, that plaintiff is entitled to only one award of statutory damages ranging from $500 to $20,000. And if a plaintiff proves that two different defendants each committed five separate infringements of five different works, the plaintiff is entitled to ten awards, not fifty.

*Mason v. Montgomery Data, Inc.,* 967 F.2d 135, 143-44 (5th

Cir.1992); *see also Walt Disney Company v. Powell,* 897 F.2d 565, 569 (D.C.Cir.1990).

In this case, however, the district court determined that the parties had failed to raise the issue of whether multiple airings of the same episode were included within the 900 broadcasts of MCA programs that Feltner agreed he aired after MCA had withdrawn Feltner's license. The district court concluded that the parties had agreed in the pretrial stipulation that, if Feltner were found liable for copyright infringement, the number of *works* infringed was 900, one for each of the programs Feltner aired after MCA withdrew Feltner's license.

Rule 16.1E of the Local Rules of the Southern District of Florida instructs parties to file a Joint Pretrial Stipulation no later than five days prior to the pretrial conference. Rule 16.1E provides that "[t]he pretrial stipulation shall contain ... [a] concise statement of issues of law which remain for determination by the court." Rule 16.1G further provides that "the pretrial stipulation ... will control the course of the trial." We previously have stated that we owe great deference to the trial judge's interpretation and enforcement of pretrial stipulations. *See West Peninsular Title Co. v. Palm Beach County,* 41 F.3d 1490, 1493 (11th Cir.1995).

In this case, Feltner and MCA agreed in their joint pretrial stipulation that "[e]ach [of Feltner's] telecasts without MCA's authority—totalling at least 900 in number—constitutes a separate act of copyright infringement." In the statement of uncontested facts, the parties agreed that Feltner's stations "continued to

telecast MCA's programs after April 13, 1992 [the date MCA withdrew Feltner's license to telecast the programs], on a total of at least 900 separate occasions." In the "statement of issues of law which remain for determination," the parties did not list as a remaining issue whether multiple airings of a single episode of a program infringed one work or multiple works. The parties merely stated generally that "what statutory damages shall be awarded in favor of MCA under § 504(c) of the Copyright Act" remained to be determined. Thus, despite agreeing to the fact that 900 acts of copyright infringement had occurred, nowhere in the pretrial stipulation did Feltner alert the district court to the specific legal issue of whether the 900 infringements might include multiple broadcasts of the same program that did not constitute separate "works" under section 504(c).

Moreover, Feltner presented no evidence at trial that the 900 "separate act[s] of copyright infringement" he stipulated to in the pretrial stipulation involved less than 900 infringements under section 504(c) due to multiple airings of the same program. Feltner failed even to raise this issue until his closing argument. As the district judge properly pointed out after announcing his findings, closing argument simply was too late to raise a new legal issue for the first time. *See Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1030 (5th Cir. Unit B 1982) ("[A]n argument first raised in a postjudgment motion is simply too late.").

In light of the pretrial stipulation in this case, the deference we give a district court in interpreting a pretrial stipulation, and Feltner's failure to offer evidence at trial on

the issue, we find that the district court did not err in interpreting the pretrial stipulation as not placing in issue the number of works infringed. Although Feltner now argues on appeal that 900 acts of copyright infringement is not the same as 900 works under section 504(c), the time to raise this issue was in the issues of law section of the pretrial stipulation, or, at the very latest, during his case at trial. Because Feltner failed to raise the issue there, he cannot now raise it here.

Trial courts cannot be expected to try an issue that the parties have not placed before it. Accordingly, the district court did not err in refusing to reopen the case after it had announced its findings to hear evidence on an issue not identified in the pretrial stipulation. Accordingly, the district court's judgment is AFFIRMED.

BRIGHT, Senior Circuit Judge, dissenting:

The district court assessed Feltner $9,000,000 in statutory damages—$10,000 for each of the 900 occasions on which MCA's programming was improperly aired. Because I believe that the district court incorrectly assessed statutory damages for each infringement (including repeat showings) rather than for each work (i.e. individual episode) infringed, I would remand the case to the district court for a correct determination of damages.

The court's opinion correctly observes that the text of section 504(c)(1) of the Copyright Act and the case law interpreting that Act make clear that the statute allows only one award of statutory damages for each *work* infringed. Section 504(c)(1) provides:

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, *an* award of statutory damages for *all* infringements involved in the action, with respect to any *one* work,....

17 U.S.C. § 504(c)(1) (emphasis added).[1] *See Mason v. Montgomery Data, Inc.,* 967 F.2d 135, 143-44 (5th Cir.1992) ("So if a plaintiff proves that *one* defendant committed *five* separate infringements of *one* copyrighted work, that plaintiff is entitled to only one award of statutory damages...."); *Walt Disney Co. v. Powell,* 897 F.2d 565, 569 (D.C.Cir.1990) ("Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements.")

This court, however, finds this established legal standard inapposite because of statements included in the pretrial stipulation. The majority observes that Feltner presented no evidence at trial that the 900 "showings" he stipulated to in the pretrial stipulation amounted to less than 900 "works" due to multiple telecasts of the same program. The majority contends that because Feltner failed to raise this issue until after the close of the evidence, he became estopped from raising the issue in the

---

[1]The legislative history of section 504 provides:

> A single infringer of a single work is liable for a single amount ..., no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated, or occurred in a related series.

H.R.Rep. No. 1476, 94th Cong., 2d Sess., at 162 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5778.

district court and from asserting error in that regard on appeal.[2] The majority decision represents an erroneous interpretation of the pretrial stipulation, unjustly shifts the burden of establishing damages from the plaintiff to the defendant, and awards the plaintiff damages to which it is not entitled under the law.

First, the issue of damages was properly before the district court. One of the remaining issues of law specified by the pretrial stipulation was "what statutory damages shall be awarded in favor of MCA under § 504(c) of the Copyright Act." As developed above, section 504(c) provides for one award of statutory damages per work infringed. The first question subsumed in this issue is thus what constitutes a "work" under the Copyright Act. Although this sub-issue was not specifically raised in the pretrial stipulation, the district court, and indeed this court on appeal, properly addressed it as a necessary aspect of the statutory damages claim. Having resolved this initial question by determining that each episode constituted a work, the inquiry shifted to how many works had been infringed. The district court, however, held that this second sub-issue had not been properly raised. To my mind, there exists no basis for determining that the pretrial stipulation raised the first sub-issue but not the second. Both are subsumed by the issue "what statutory damages shall be awarded in favor of MCA under § 504(c) of the Copyright Act."

<hr />

[2]Feltner argues on appeal that he was surprised by the sudden close of the trial and that the district court erred by denying him the opportunity to present evidence on the issue of damages. Although this claim is not the basis of my dissent, I believe the majority should have addressed this alleged irregularity in the proceedings before summarily stating that Feltner "failed to offer evidence" on the damages issue.

Second, the plaintiff, MCA, bears the burden of establishing its right to damages. Once the district court determined that each episode constituted a "work," it was MCA's obligation to establish the number of different episodes improperly aired. MCA did not carry this burden by the pretrial stipulation, and the district court plainly erred in finding otherwise. The pretrial stipulation stated only that there had been 900 unauthorized telecasts. Contrary to the opinion of the court, at no point did the pretrial stipulation state the number of "works" infringed, nor did it provide the number of different episodes involved.[3] Although 900 may have been a convenient number, it was not the correct number of "works."[4] It was MCA's obligation to establish the number of works infringed. The district court should not have determined MCA's failure to fully develop its damages claim in a manner favorable to MCA and detrimental to the defendant.

---

[3]In fact, what constituted a work was an issue before the district court and indeed before this court on appeal. MCA contended that each episode constituted a work, while Feltner maintained that each television series was a single work. Since the number of different episodes was irrelevant under Feltner's version of the case, he had no reason to develop those facts at trial. Once the district court determined that each episode constituted a work and announced that it would use the 900 infringements established by the pretrial stipulation as the basis of its award, Feltner argued that several of the showings were of the same episodes and thus constituted multiple infringements of a single work. *See* Tr. of Decision at 13-18. The district court held that the argument came too late and refused to accept evidence on the point.

[4]During the hearing at which the district court orally made its judgment, the district court allowed Feltner to put evidence into the record concerning the number of the 900 showings which were repeat broadcasts of the same episodes. Feltner's statements indicated that at least 300 showings were repeats. *See* Tr. of Decision at 15-17. At $10,000 per infringement this amounts to over $3,000,000 in excess damages.

In my view, a court should hold a party to the language of the stipulation and nothing more.  Feltner stipulated only to 900 telecasts of copyrighted material without MCA's authority, not to 900 *works*.  Furthermore, the issues of law raised in the pretrial stipulation concerned the amount of statutory damages to be awarded.  The $9,000,000 award is grossly unfair under these circumstances.  I dissent and would remand for a proper assessment of statutory damages based on each work shown to be infringed.