In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-2386
AMY LEE SULLIVAN, d/b/a DESIGN KIT,
 Plaintiﬀ-Appellee,
 v.

FLORA, INC.,
 Defendant-Appellant.
 ____________________

 Appeal from the United States District Court for the
 Western District of Wisconsin.
 No. 15-cv-298 — William M. Conley, Judge.
 ____________________

 ARGUED FEBRUARY 8, 2023 — DECIDED MARCH 31, 2023
 ____________________

 Before FLAUM, SCUDDER, and ST. EVE, Circuit Judges.
 ST. EVE, Circuit Judge. This is the second time this case has
come before us. In 2013, Amy Sullivan registered two “illus-
tration collections,” comprising 33 individual illustrations, for
copyright protection and sued Flora, Inc. for infringing those
copyrights. A jury then found that Flora willfully infringed
Sullivan’s copyrights and awarded her statutory damages for
each of the 33 individual illustrations infringed. Flora ap-
pealed.
2 No. 22-2386

 On the ﬁrst appeal, we answered “a question of ﬁrst im-
pression for us on the scope of statutory damages recoverable
under the Copyright Act of 1976” (the “Act”). Sullivan v. Flora,
Inc., 936 F.3d 562, 564 (7th Cir. 2019) (Flora I). Speciﬁcally, we
addressed the standard for determining whether multiple re-
lated works are each entitled to a separate statutory damages
award, or if they instead constitute one “compilation,” enti-
tling them to only a single statutory damages award. See id. at
571. We rejected the test for calculating statutory damages
that the district court utilized, which focused exclusively on
how the illustrations were copyrighted. Id. at 569. Instead, we
adopted the “independent economic value test,” id. at 570–71:
“A protected work has standalone value if the evidence shows
that work has distinct and discernable value to the copyright
holder,” id. at 571. We then remanded for the district court to
make that determination because the record at the time was
insuﬃcient for us to do so on appeal. Id. at 572.
 On remand, the district court denied Flora’s request to re-
open discovery; held that Flora had waived several argu-
ments challenging the independent economic value of certain
illustrations; granted summary judgment in favor of Sullivan;
and entered the same verdict the jury previously had re-
turned. We aﬃrm in part, reverse in part, and remand once
again.
 I. Background
 Flora, Inc. manufactures herbal supplement and health
products. In 2013, Flora hired Joseph Silver to produce ads for
two new products, “7 Sources” and “Flor-Essence.” Silver, in
turn, hired Amy Sullivan. Sullivan worked with Silver to pro-
duce 33 illustrations, which Silver animated to create two mo-
tion graphics. Sullivan granted Flora an exclusive license to
No. 22-2386 3

use the illustrations for the “7 Sources” and “Flor-Essence” ad
campaigns. But when Sullivan noticed that Flora was using
the illustrations beyond the two ad campaigns agreed to in
the license, she registered the two “illustration collections,”
which included the 33 individual illustrations, for copyright
protection and sued Flora for infringing those copyrights.
 Under the Act, plaintiﬀs can choose between actual or stat-
utory damages. 17 U.S.C. § 504(c)(1). A separate statutory
damages award is warranted for each “one work” that is in-
fringed. Id. “For the purposes of this subsection, all the parts
of a compilation or derivative work constitute one work.” Id.
“A ‘compilation’ is a work formed by the collection and as-
sembling of preexisting materials or of data that are selected,
coordinated, or arranged in such a way that the resulting
work as a whole constitutes an original work of authorship.
The term ‘compilation’ includes collective works.” Id. at § 101.
In the case of willful infringement, the maximum statutory
damages award increases from $30,000 to $150,000. Id.
§ 504(c)(2).
 In its ﬁrst motion for summary judgment, Flora argued
that Sullivan could not bring this suit herself because Sullivan
authored the illustrations jointly with Silver. See Flora I, 936
F.3d at 574 (“Joint authorship is a defense to copyright in-
fringement.”). The court denied Flora’s motion, holding that
whether the illustrations were jointly authored was a question
of fact for the jury.
 However, “[b]efore turning to the question of whether the
illustrations constitute a joint work, the [district] court note[d]
that Sullivan registered the two sets of illustrations as collec-
tions, apparently treating each set as a single work.” Later,
during the pretrial conference, Sullivan challenged the court’s
4 No. 22-2386

ﬁnding that she treated each copyright as a single work and
argued that the copyrights at issue are properly described as
“illustrations,” not “illustration collections.” The court or-
dered supplemental brieﬁng on that issue and whether the in-
dividual illustrations in Sullivan’s copyright registrations are
entitled to separate statutory damages awards.
 On April 17, 2017, the ﬁrst day of trial, the district court
rejected Flora’s arguments that Sullivan could only recover
“one award per registration,” and, alternatively, that the in-
dependent economic value test applies. Instead, the court,
“[b]ased on the undisputed fact that plaintiﬀ registered her
two illustration collections as a collective or group work[,] …
conclude[d] that the copyrighted works are collective works,
in which contributions, constituting separate and individual
works in themselves, are assembled into a collective whole.”
Flora I, 936 F.3d at 568. According to the district court,
“[u]nder 17 U.S.C § 101, therefore, the individual illustrations
are individual works, entitling Sullivan to separate statutory
damages awards. If this case reaches the damages phase, the
jury will be so instructed.”
 Trial then proceeded in three phases. “In phases one and
two, the jury determined that Flora had copied and used Sul-
livan’s illustrations willfully and without authorization and
furthermore that the works were not joint works but instead
belonged to Sullivan alone.” Flora I, 936 F.3d at 567. Phase
three was the damages phase. Sullivan herself testiﬁed, and
Sullivan called an expert witness, Daniel Mager, to testify re-
garding actual damages. Flora never disclosed an expert wit-
ness for damages, and did not call any witnesses during this
phase of trial.
No. 22-2386 5

 At the close of evidence, the district court instructed the
jury that, “for purposes of considering a statutory damages
award, you may consider each illustration in the 7 Sources il-
lustration collection and the Flor-Essence illustration collec-
tion as an independent, copyrighted work.” Id. at 568. Having
already found that Flora willfully infringed Sullivans’s copy-
rights, the jury awarded Sullivan $3,600,000 in statutory dam-
ages and $143,500 in actual damages. Sullivan chose the
higher statutory damages award. Flora appealed.
 In Flora I, we rejected the test for determining whether
multiple works are entitled to separate statutory damages
awards that the district court adopted, which focused exclu-
sively on how the illustrations were registered for copyright
protection, id. at 568–69, and the test adopted by the Second
Circuit, “which focuses on whether the copyright holder mar-
keted and distributed the multiple protected works as indi-
vidual works or as a compendium of works (like, for example,
an album),” id. at 571. Instead, we followed the First, Ninth,
Eleventh, and D.C. Circuits in adopting the independent eco-
nomic value test:
 § 504(c)(1) requires courts confronted with circum-
 stances with multiple works and multiple infringe-
 ments to determine, or to charge a jury with fact ﬁnd-
 ing tailored to answering, whether the protected works
 have value only in and through their composite whole
 (and thus meet the deﬁnition of a “compilation” in
 § 101) or instead have standalone value at the level of
 “one work.”
Id.; see Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106,
1116–17 (1st Cir. 1993) (“The test … is a functional one, with
the focus on whether each expression … has an independent
6 No. 22-2386

economic value and is, in itself, viable.”); VHT, Inc. v. Zillow
Grp., Inc., 918 F.3d 723, 747 (9th Cir. 2019) (“In the Ninth Cir-
cuit, the question of whether something—like a photo, televi-
sion episode, or so forth—has ‘independent economic value’
informs our analysis of whether the photo or episode is a
work, though it is not a dispositive factor.”); MCA TV Ltd. v.
Feltner, 89 F.3d 766, 769 (11th Cir. 1996) (“This test focuses on
whether each expression has an independent economic value
and is, in itself, viable.”); Walt Disney Co. v. Powell, 897 F.2d
565, 569 (D.C. Cir. 1990) (“[S]eparate copyrights are not dis-
tinct works unless they can ‘live their own copyright life.’”).
 We did not attempt to make that determination ourselves
because “the record as it presently stands does not allow us
to resolve as a factual matter whether all or part of Sullivan’s
33 illustrations are separate works with distinct and discern-
able value or part of two broader compilations.” Flora I, 936
F.3d at 572; see also id. at 565 (“It is neither appropriate nor
possible for us to make that ﬁnding on the record before us.”).
Instead, we vacated the judgment and remanded to the dis-
trict court for further proceedings. Id. at 565. We took care to
note that our decision “in no way calls the jury’s ﬁndings of
infringement into question. On remand the district court will
have ample ﬂexibility to structure the proceedings to enable
the requisite ﬁndings pertinent to statutory damages.” Id. at
572. We also held that Flora waived its arguments based on
the timing of the copyright registrations, id. at 573, and the
joint authorship issue, id. at 574.
 On remand, the parties did not agree on the appropriate
way to proceed. Flora asked the court to reopen fact discovery
on the issue of independent economic value, reopen expert
discovery, allow for a second round of dispositive motions,
No. 22-2386 7

and retry damages. In contrast, Sullivan urged the court to
decide the issue based on the factual record before it.
 The district court agreed with Sullivan and denied Flora’s
request to reopen discovery. The court found that, although
its decision regarding the number of statutory damages
awards rejected Flora’s argument that the individual illustra-
tions lack independent economic value, that decision came on
the ﬁrst day of trial, long after the close of discovery: “In other
words, the court made no determination—and committed no
error—while discovery was open that would have limited its
scope or otherwise justiﬁed either parties’ belief that this was
an issue they should not explore.” The court then treated Sul-
livan’s brief on remand as a motion for summary judgment.
In responding to the motion, Flora could supplement the rec-
ord with any evidence it already had but was not permitted
to obtain additional discovery.
 When ruling on the summary judgment motion, the court
found that Flora waived its argument “that at least some of
the 33 illustrations do not have separate economic value.” The
court then found at summary judgment that the 33 illustra-
tions constitute separate works, even after applying our hold-
ing in Flora I. The court’s decision relied on “undisputed” ex-
pert testimony from the ﬁrst trial regarding actual damages,
trial testimony from Sullivan herself, and evidence that Flora
used individual illustrations in its infringing ads.
 Flora timely appealed, contending that the district court
(1) erred by ﬁnding it waived arguments directly relating to
the independent economic value test, (2) violated this court’s
mandate by refusing to reopen discovery and instead ruling
on the same record that existed on the ﬁrst appeal, and (3)
8 No. 22-2386

improperly weighed evidence when ruling on summary judg-
ment.
 II. Analysis
A. Scope of Remand
 Flora invokes both the mandate and waiver doctrines to
support reversal. “These doctrines often overlap.” Bradley v.
Village of University Park, 59 F.4th 887, 895 (7th Cir. 2023).
“[T]his court does not remand issues to the district court
when those issues have been waived or decided.” United
States v. Husband, 312 F.3d 247, 250 (7th Cir. 2002). Under the
mandate rule, “when a court of appeals has reversed a ﬁnal
judgment and remanded the case, the district court is re-
quired to comply with the express or implied rulings of the
appellate court.” In re A.F. Moore & Assocs., Inc., 974 F.3d 836,
840 (7th Cir. 2020) (quoting Moore v. Anderson, 222 F.3d 280,
283 (7th Cir. 2000)). These doctrines “limit remand [and] are
implicitly taken into account when this court remands a case.”
Bradley, 59 F.4th at 896 (quoting Husband, 312 F.3d at 250).
“Thus ‘scope of remand’ is an inclusive term and is the rele-
vant inquiry.” Husband, 312 F.3d at 250.
 There are two major limitations to the scope of a remand.
“First, any issue that could have been but was not raised on
appeal is waived and thus not remanded. … Second, any issue
conclusively decided by this court on the ﬁrst appeal is not
remanded.” Id. at 250–51 (citations omitted). “[T]he scope of
the remand is determined not by formula, but by inference
from the opinion as a whole.” United States v. Parker, 101 F.3d
527, 528 (7th Cir. 1996) (citing United States v. Polland, 56 F.3d
776, 779 (7th Cir. 1995)). “We review de novo the scope of a
prior remand, including the application of the mandate rule
No. 22-2386 9

and … [w]hether a party waived an issue in the course of a
prior appeal[.]” Bradley, 59 F.4th at 896.
 1. Waiver
 Waiver “is the intentional relinquishment or abandon-
ment of a known right.” Morgan v. Sundance, Inc., 142 S. Ct.
1708, 1713 (2022) (quoting United States v. Olano, 113 S. Ct.
1770, 1777 (1993)); Bradley, 59 F.4th at 895 (same). “The ques-
tion of whether an issue was waived on the ﬁrst appeal is an
integral and included element in determining the ‘scope of re-
mand.’” Husband, 312 F.3d at 250; Bradley, 59 F.4th at 896
(“When a party explicitly waives an issue, that waiver shapes
the law of the case and the scope of any remand.”). “[P]arties
cannot use the accident of remand as an opportunity to reo-
pen waived issues.” United States v. Morris, 259 F.3d 894, 898
(7th Cir. 2001).
 The district court’s summary judgment decision relied, in
part, on its ﬁnding that Flora waived several arguments by
failing to raise them at trial: “that at least some of the 33 illus-
trations do not have separate economic value” (i.e., “that there
were [less] than 33 illustrations”); and, relatedly, that illustra-
tions containing only “background texture” do not contain in-
dependent economic value. The district court erred in this rul-
ing.
 Contrary to the district court’s ﬁndings, Flora did argue
prior to trial that, in the alternative to its claim that the stand-
ard is “one award per registration,” Sullivan is only entitled
to two statutory damages awards because “the individual il-
lustrations have no economic value, and are not economically
viable by themselves.” Indeed, “throughout the litigation[]
[Flora] made its position on statutory damages abundantly
10 No. 22-2386

clear, including by brieﬁng the issue during the pretrial pro-
ceeding that resulted in the district court’s determinative rul-
ing. The law required no more in this circumstance.” See Flora
I, 936 F.3d at 567. The district court did not rule until the ﬁrst
day of trial that, if infringed, the 33 illustrations warranted 33
statutory damages awards. After that ruling, Flora was not re-
quired to reiterate its objection and argue that there were less
than 33 separate illustrations or that any of them lacked inde-
pendent economic value; the district court’s ruling rejected
those arguments. See Bradley, 59 F.4th at 896 n.2 (“Bradley had
made these arguments and the district court had rejected
them. He was not required to repeat himself ad nauseam.”);
Alton Box Bd. Co. v. EPA, 592 F.2d 395, 400 (7th Cir. 1979)
(holding the fact that an argument could have been raised ear-
lier “does not necessarily mean it could not be done later …
[and] does not foreclose the opportunity for” raising it). Flora
instead argued that Sullivan was a joint author and that it did
not infringe the copyrights. Ultimately, nothing in the record
suggests that Flora intentionally relinquished or abandoned
the arguments the court deemed as waived. See Morgan, 142
S. Ct. at 1713; Alton Box, 592 F.2d at 400 (“A waiver must be
intentional and voluntary.”). Thus, these arguments fall
within the scope of our remand.
 Further, Flora did not waive these arguments on the ﬁrst
appeal because we remanded this issue with a new legal
standard. In Flora I, we adopted the independent economic
value test as an issue of ﬁrst impression and directed the dis-
trict court to apply the new standard. And “[i]ssues that arise
anew on remand are generally within the scope of the re-
mand.” Husband, 312 F.3d at 251 n.4 (citing Morris, 259 F.3d at
898). Thus, Flora’s arguments—raised during summary judg-
ment below and here on appeal—that directly relate to
No. 22-2386 11

whether the 33 individual illustrations have independent eco-
nomic value are not waived and fall directly within the scope
of remand.
 That said, Flora attempts to relitigate an issue we held it
had waived in Flora I and is therefore outside of the scope of
remand. Flora argues that some illustrations lack independ-
ent economic value because they were jointly authored. In
Flora I, we found that Flora had waived its joint authorship
argument because Flora “failed to present this challenge to
the district court in response to the jury’s adverse verdict.”
Flora I, 936 F.3d at 574; see also id. at 575 (“Even if Flora had
not waived its joint authorship challenge, we would be quick
to conclude that the jury reasonably found Sullivan was the
sole author of the 33 illustrations in question.”). Flora cannot
now use “the accident of remand as an opportunity to reopen
waived issues.” See Morris, 259 F.3d at 898.
 2. The Mandate Rule
 “[T]he [district] court must follow ‘the spirit as well as the
letter of the mandate.’” In re A.F. Moore, 974 F.3d at 840 (cita-
tion omitted). “Our review of the scope of remand from the
original appeal was de novo, but since that remand called for
an exercise of discretion, our review of the district court’s [dis-
covery-related orders] [is] for an abuse of that discretion[.]”
Bradley, 59 F.4th at 897 n.3 (citation omitted); see Hassebrock v.
Bernhoft, 815 F.3d 334, 340 (7th Cir. 2016) (“We review discov-
ery-related orders for abuse of discretion.”).
 In Flora I, we noted that we were unable to determine
whether the 33 illustrations constitute a compilation because
the record was not suﬃciently developed on the factual issues
relevant to statutory damages, and we left it to the district
12 No. 22-2386

court’s discretion to determine what proceedings were neces-
sary to make the requisite factual ﬁndings. See Flora I, 936 F.3d
at 572 (“On remand the district court will have ample ﬂexibil-
ity to structure the proceedings to enable the requisite ﬁnd-
ings pertinent to statutory damages.”). The district court sub-
sequently denied Flora’s request to reopen fact discovery or
permit additional expert discovery because the parties previ-
ously had the opportunity to conduct discovery on this issue.
The court then found that “the undisputed facts of record
compels a ﬁnding that the 33 illustrations constitute separate
works.”
 The district court did not abuse its discretion by refusing
to reopen discovery. Although the district court’s ruling on
the eve of trial rejected any arguments based on independent
economic value, that ruling came well after the close of dis-
covery. As the court noted, “the court made no determina-
tion—and committed no error—while discovery was open
that would have limited its scope or otherwise justiﬁed either
parties’ belief that this was an issue they should not explore.”
For whatever reason, Flora simply decided not to pursue dis-
covery on the issue, despite having both the opportunity and
motivation to do so.
 That is not the end of the matter, however. We ruled in
Flora I that the record was insuﬃcient to resolve as a factual
matter whether each of the 33 illustrations have independent
economic value because “[t]he district court did not ask (or
put to the jury) the questions we see as necessary for resolving
the statutory damages question.” 936 F.3d at 572. Despite our
ruling, the district court proceeded to base its summary judg-
ment decision on the very record we found insuﬃcient to
make that determination. Even if the court disagreed and
No. 22-2386 13

believed that the record was suﬃcient for the task, “it must
execute our mandate nevertheless.” In re A.F. Moore, 974 F.3d
at 840.
 In United States v. Husband, for example, we remanded so
that, among other things, the record could be developed re-
garding the question of how imminent the police thought the
loss of the drug evidence was, and the parties could reconcile
their conﬂicting arguments. 312 F.3d at 253. On remand, the
district court disagreed with us, see id. (“The court is not as
concerned as the Seventh Circuit was with the parties’ seem-
ingly contradictory arguments.”), and violated our mandate
by ruling on those issues without addressing any facts be-
yond those we already knew of in the initial appeal. Id. at 253–
54.
 On remand here, the district court similarly did not ad-
dress any facts beyond what we found insuﬃcient to resolve
the issue in Flora I, see Husband, 312 F.3d at 253–54, 1 nor did it
put the question to a jury. While the district court was not re-
quired to reopen discovery, once it decided not to, it should
have put the question to a jury. See Flora I, 936 F.3d at 572.
Instead, the court decided the factual issue when ruling on a

 1
 Sullivan cites McClure v. O. Henry Tent & Awning Co., 192 F.2d 904,
905 (7th Cir. 1951), for her proposition that “in a remand situation like this,
the District Court may base its ﬁndings and judgment on the existing rec-
ord, without any further hearing.” McClure is easily distinguishable, how-
ever, because there we never held that the record was insuﬃcient to ad-
dress the issue of remand. To the contrary, “[t]he record presented on the
original appeal discloses that the proofs had been fully developed, and we
think they are suﬃcient to support the additional ﬁnding of facts. Under
these circumstances it was not error for the court to dispense with further
hearings.” Id. The opposite is true here. See Flora I, 936 F.3d at 572.
14 No. 22-2386

summary judgment motion based on the exact record we pre-
viously found insuﬃcient and thus it violated our mandate.
 Finally, Flora also argues that, even if each illustration has
independent economic value, summary judgment is im-
proper because Sullivan failed to prove that Flora used each
of the 33 illustrations in its infringing ads. This argument ex-
ceeds the scope of remand. At trial, the jury found that Flora
infringed Sullivan’s copyrights, and Flora I “in no way calls
the jury’s ﬁndings of infringement into question.” 936 F.3d at
572; see also Parker, 101 F.3d at 528 (“If the opinion identiﬁes a
discrete, particular error that can be corrected on remand
without the need for a redetermination of other issues, the
district court is limited to correcting that error.”). Flora cannot
now argue that any speciﬁc illustration was not actually in-
fringed—it had its chance to convince the jury that it did not
infringe Sullivan’s copyrights but failed to do so.
B. Summary Judgment
 We start our summary judgment analysis with a discus-
sion of the test for statutory damages.
 Section 504(c)(1) requires courts confronted with cir-
 cumstances with multiple works and multiple in-
 fringements to determine, or to charge a jury with fact
 ﬁnding tailored to answering, whether the protected
 works have value only in and through their composite
 whole (and thus meet the deﬁnition of “compilation”
 in § 101) or instead have standalone value at the level
 of “one work.”
Flora I, 936 F.3d at 571. This is a threshold damages question.
VHT, Inc., 918 F.3d at 747.
No. 22-2386 15

 In Flora I, we noted that “[a] protected work has
standalone value if the evidence shows that work has distinct
and discernable value to the copyright holder,” 936 F.3d at
571, but courts have characterized this inquiry in various
ways—e.g., asking whether the works have “independent
economic value,” VHT, Inc., 918 F.3d at 747, can “live their
own copyright life,” Walt Disney, 897 F.2d at 569, have “sepa-
rate economic value, whatever their artistic value,” id., or
whether it “is, in itself, viable,” MCA TV, 89 F.3d at 769. How-
ever the test it is characterized, “the proper inquiry under
§ 504(c)(1) asks whether Sullivan’s 33 illustrations constitute
33 individual works or instead are parts of two compilations.”
Flora I, 936 F.3d at 568–69.
 Factors relevant to the compilation determination include,
among other things, “whether the copyright holder marketed
and distributed the multiple protected works as individual
works or as a compendium of works (like, for example, an al-
bum),” id. at 571, whether the works were produced together
or separately, Gamma Audio, 11 F.3d at 1117, and how those
works were registered for copyright protection. Ultimately,
“[t]he necessary ﬁnding requires a focus on where the market
assigns value.” Flora I, 936 F.3d at 572. This is a totality of the
circumstances analysis; no single factor is dispositive. See, e.g.,
id. at 569 (holding district court erred “by giving controlling
weight to the fact that Sullivan registered her illustrations as
a group and therefore protected each of the 33 illustrations”);
VHT, Inc., 918 F.3d at 747 (“[C]onsideration of the independ-
ent economic value factor [alone] does not answer the ques-
tion whether something is a compilation.”); id. (“[T]he ques-
tion of whether something—like a photo, television episode,
or so forth—has ‘independent economic value’ informs our
16 No. 22-2386

analysis of whether the photo or episode is a work, though it
is not a dispositive factor.”).
 * * *
 When evaluating summary judgment, the district court re-
jected several arguments Flora made to establish that the in-
dividual illustrations are part of a compilation: (1) the in-
voices Flora submitted to Sullivan show that Sullivan pro-
duced and distributed both “illustration collections” as single
products, not as separate illustrations; (2) Sullivan never sold,
or attempted to sell, any of the illustrations independently; (3)
Flora-speciﬁc content included in the illustrations impacts
their independent economic value; and (4) illustrations that
only include “background textures” lack any independent
economic value. The court then awarded summary judgment
in favor of Sullivan and reimposed the damages amount in
the original judgment. The district court erred in doing so.
 “Our review is de novo. We ‘view the facts and draw rea-
sonable inferences in the light most favorable to the non-mov-
ing party.’ Summary judgment is appropriate if ‘there is no
genuine dispute as to any material fact and the movant is en-
titled to judgment as a matter of law.’” Uebelacker v. Rock En-
ergy Coop., 54 F.4th 1008, 1010 (7th Cir. 2022) (internal citations
omitted).
 1. The Invoices
 Flora alleges that a jury could view the two invoices it sub-
mitted to Sullivan—for the “7 Sources” and “Flor-Essence” ad
campaigns—as indicating that the works only have value as
two compilations, not as 33 individual illustrations. Speciﬁ-
cally, these invoices were each for a single “motion graphic,”
not multiple illustrations. The district court rejected this
No. 22-2386 17

argument because it found that Flora misrepresented the in-
voices; the invoices each describe the product as an “illustra-
tion” not a “motion graphic.” Further, according to the court,
“Sullivan expressly reserved ‘any usage rights not exclusively
transferred,’ signaling her belief that the illustrations had
value beyond their use in the videos themselves.”
 Whether the invoices refer to the product as an “illustra-
tion” or a “motion graphic” does not detract from the rele-
vance of those invoices. Even if there are multiple plausible
interpretations, the court was obligated to view this evidence
in the light most favorable to Flora. Viewed in that light, a rea-
sonable jury could determine that Sullivan’s selling the illus-
trations as two products, instead of 33, supports the inference
that the 33 individual illustrations lack independent economic
value.
 Relatedly, Flora highlights that Sullivan registered the il-
lustrations as two copyrights, not 33, as evidence that the il-
lustrations only have value as part of those two compilations.
The district court rejected this argument and refused to eval-
uate this factor because, in its view, “the sole grounds for re-
mand” in Flora I was our rejection of a test focused on how the
works were copyrighted. There appears to be a circuit split on
whether this factor—how the works were registered—is rele-
vant to the statutory damages analysis.
 Courts have primarily focused on two factors when eval-
uating this issue. First, Copyright Oﬃce regulations explicitly
permit applicants to include multiple works in a single regis-
tration form, in a procedure known as a group registration. 37
C.F.R. § 202.3(b)(2) (“[A]n applicant may submit an applica-
tion for registration of individual works and certain groups of
works.”); see also 17 U.S.C. § 408(c)(1) (authorizing the Register
18 No. 22-2386

of Copyrights to regulate registration classiﬁcations, includ-
ing permitting “a single registration for a group of related
works”); U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S.
COPYRIGHT OFFICE PRACTICES § 1105 (3d ed. amend. 2021),
(discussing group registration process), available at https://
copyright.gov/comp3/chap1100/ch1100-registration-multiple
-works.pdf. 2 Because applicants have the option to register
certain related works in a single registration, the First Circuit
has held that there is “no authority” for inferring that regis-
tering multiple works on one form indicates that the author
considered them to be one work. See Gamma Audio, 11 F.3d at
1117; see also Bryant v. Media Right Prods., Inc., 603 F.3d 135,
141 (2d Cir. 2010) (“The fact that each song may have received
a separate copyright is irrelevant to this analysis.”).
 Second, where the works can properly be registered
through the group registration process, “the Copyright Oﬃce
warns that such a registration ‘may’ limit the copyright holder
‘to claim only one award of statutory damages in an

 2 Only certain works are eligible to use the group registration process.

See COMPENDIUM (THIRD) § 1101 (2021). The regulations that were eﬀective
when Sullivan registered her two copyrights in November and December
of 2013 allowed automated databases, related serials, daily newspapers,
contributions to periodicals, daily newsletters, and published photo-
graphs to be registered as groups works. 37 C.F.R. § 202.3(b)(5)–(10) (Jul.
18, 2013). Flora did not challenge whether Sullivan could properly use the
group registration process prior to or during trial, or on the ﬁrst or second
appeal, and thus waived any potential challenge to the way Sullivan reg-
istered her copyrights. Cf. Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199,
204 (3d Cir. 2005) (“Since the Register of Copyrights has not promulgated
regulations allowing for group registration of sculptural works, we con-
clude that [plaintiﬀ’s] registration is not valid under the current group
registration provisions.”).
No. 22-2386 19

infringement action, even if the defendant infringed all of the
component works covered by the registration.’” VHT, Inc., 918
F.3d at 747–48; see also COMPENDIUM (THIRD) § 1105.4 (2021)
(“Copyright owners who use a group registration option may
be entitled to claim a separate award of statutory damages for
each work … that is covered by the registration, because a
group registration covers each work or each issue that is sub-
mitted for registration (rather than the group as a whole).”
(emphasis added)). Thus, according to the Ninth Circuit,
“[t]hough the registration label is not controlling, it may be
considered by the court when assessing whether a work is a
compilation.” VHT, Inc., 918 F.3d at 748.
 We hold, in line with the Ninth Circuit, that how the works
are registered may be relevant when evaluating statutory
damages. If works cannot properly use the group registration
process, then how those works are registered is relevant to
determining independent economic value. And even if eligi-
ble, using the group registration process is not required. See
COMPENDIUM (THIRD) § 1105 (2021) (“Applicants must decide
whether group registration is the optimal means of register-
ing the works at issue.”). Indeed, if applicants are worried
about the number of statutory damages they would receive,
they may register their works separately, even if they could
register them as a group, to increase the likelihood of receiv-
ing multiple statutory damages awards in the case of infringe-
ment. 3

 3 Conversely, registering multiple works in one application “may be

the most convenient and cost eﬀective way to register multiple works of
authorship.” See COMPENDIUM (THIRD) § 1105 (2021).
20 No. 22-2386

 2. Marketing Eﬀorts
 Flora next argues that Sullivan failed to market the illus-
trations individually, indicating that they lack any independ-
ent economic value. Speciﬁcally, Flora pointed to evidence in-
dicating that Sullivan typically markets her illustrations on
Etsy (an online marketplace primarily for craft goods) but did
not attempt to market any of the illustrations at issue here on
her Etsy page. The district court rejected this argument be-
cause Sullivan had marketed the illustrations to Flora, and
“the fact that the individual illustrations actually had discrete
value from Flora’s perspective provides some conﬁrmation of
Sullivan’s and her expert’s undisputed testimony that the il-
lustrations had stand-alone, economic value to the copyright
holder.”
 But Sullivan’s expert, Mager, was disclosed as an expert
on, and testiﬁed regarding, actual damages, not statutory
damages. Neither party disclosed an expert to testify as to
statutory damages. Speciﬁcally, Mager testiﬁed that “the mar-
ket value” “for a reuse of each illustration” is “[b]etween 3
and $6,000.” The district court erred by relying on Mager’s
testimony regarding actual damages to grant summary judg-
ment on the issue of statutory damages. Mager did not base
his opinion on any independent evaluation of the speciﬁc il-
lustrations at issue. Indeed, Mager did not even know how
many illustrations there were, stating “I think it was 44 illus-
trations.” Instead, Mager’s testimony assumed that each of
the 33 illustrations were entitled to a separate statutory dam-
ages award—which was proper at the time, considering the
court had previously instructed the jury that it may consider
each of the 33 illustrations as “an independent, copyrighted
work”—then used his personal experience and “benchmarks
No. 22-2386 21

to determine [reuse] price, including the Graphic Artists
Guild Handbook for Pricing & Ethical Guidelines and the Sec-
ond Wind Pricing Survey.”
 We vacated the jury’s statutory damages award, however,
because the court failed to instruct the jury on the independ-
ent economic value test, and we remanded for the court to ap-
ply that test and determine the correct number of statutory
damages awards. Flora I, 936 F.3d at 572. Finding that an illus-
tration is entitled to a separate statutory damages award re-
quires ﬁrst ﬁnding that the illustration has independent eco-
nomic value. Thus, Mager’s testimony, which assumed that
Sullivan’s illustrations were each entitled to a separate statu-
tory damages award (i.e., assumed the illustrations had inde-
pendent economic value), cannot now (without more) be used
to establish that those same illustrations have independent
economic value in the ﬁrst place. Mager’s testimony may be
relevant to whether or not any individual illustration consti-
tutes a “work,” but it does not conclusively show that any il-
lustration is not nonetheless part of a “compilation.” See VHT,
Inc., 918 F.3d at 747.
 Flora also argues that, not only is Sullivan’s failure to in-
dividually market her illustrations evidence that they did not
have independent economic value, but the fact that the mar-
ket failed to respond to Sullivan’s copyright registrations is
similarly evidence that the market did not consider the indi-
vidual illustrations to have independent economic value. The
court rejected this argument because “the lack of interest
could just as easily be because the product itself is poor or the
advertising was not eﬀectively circulated to the right target
audience.” “In any event,” the court held, “the fact that Flora
perceived the economic value to individual illustrations is
22 No. 22-2386

stronger evidence than that its use may not have been eﬀec-
tively marketed in an isolated case.”
 In making this determination, the district court weighed
the evidence, which is inappropriate on summary judgment.
Courts must “resist the temptation to act as jurors when con-
sidering summary judgment motions.” Coleman v. Donahoe,
667 F.3d 835, 862 (7th Cir. 2012). Basing a summary judgment
decision on the belief that some evidence is “stronger” than
other evidence is a textbook case of weighing evidence. This
error alone requires reversing the district court’s summary
judgment decision.
 3. Flora-Speciﬁc Content
 The district court further rejected Flora’s argument that
many of the illustrations contain Flora-speciﬁc content—e.g.,
Flora trademarks, product names, and logos. In rejecting
Flora’s argument, the court relied on an “apt illustration” Sul-
livan included in support of her motion for summary judg-
ment, purportedly showing that trademarks have market
value even if the trademark holder can prevent others from
using it. The court, tempted by these “seemingly compelling
facts,” see White v. Woods, 48 F.4th 853, 861 (7th Cir. 2022),
erred by crediting Sullivan’s inference based on these facts
over Flora’s.
 Notably, in response to this argument, the district court
criticized Flora for “nitpick[ing] individual illustrations or as-
pects of individual illustrations, arguing that at least some of
the 33 illustrations do not have separate economic value.” We
remanded, however, for Flora to do just that: to try and prove
that certain illustrations lack independent economic value.
No. 22-2386 23

Flora has successfully created a genuine dispute of material
fact on these issues.
 4. Background Textures
 Finally, Flora points to illustrations that are exclusively
“background textures”—i.e., illustrations that appear to be
one solid color—alleging that a reasonable jury could deter-
mine that these “textures” lack independent economic value.
The district court did not address this argument at all, deem-
ing it waived. As discussed above, this argument falls within
the scope of our remand, and disagreement over whether
these “background textures” have independent economic
value constitutes a genuine dispute of material fact suﬃcient
to survive summary judgment.
 III. Conclusion
 “We will attempt to leave no room for doubt about the
scope of this remand.” Bradley, 59 F.4th at 905. We reverse the
district court’s grant of summary judgment both for violating
our mandate and improperly weighing evidence—this case
will now proceed to trial on the question of damages. The
scope of our remand (and the trial) is narrow and is limited to
determining whether Sullivan’s illustrations “constitute 33 in-
dividual works or instead are parts of two compilations (cor-
responding with the two advertising campaigns in which
Flora used the illustrations).” Flora I, 936 F.3d at 568–69.
 Determining whether the individual works are part of a
compilation is a threshold statutory damages question. The
fact-ﬁnder’s determination may be that only the two compila-
tions have independent economic value, all 33 individual il-
lustrations have independent economic value, or somewhere
in the middle. At trial, Flora is not prohibited from
24 No. 22-2386

“nitpicking” speciﬁc aspects of the 33 illustrations to show
that they lack independent economic value. Arguments Flora
raised here, and during summary judgment below, that di-
rectly relate to the independent economic value test are within
the scope of remand and are not waived. But Flora is not per-
mitted to relitigate the issues of infringement or joint author-
ship. These issues have already been decided by a jury and
fall outside the scope of our remand.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.